UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

LAQUISHA JACKSON,

          Plaintiff,

    v.                                  CAUSE NO. 3:25cv213 DRL-SJF

NOTRE DAME FEDERAL
CREDIT UNION,

          Defendant.

## OPINION AND ORDER

LaQuisha Jackson, proceeding *pro se*, sued Notre Dame Federal Credit Union (NDFCU) alleging it wrongfully repossessed her vehicles under certain car loan agreements. She said she and an NDFCU staff member agreed that the vehicles would be returned if she made payments by certain deadlines, but NDFCU sent the vehicles to auction despite her payments in time. She said the repossession caused her family significant hardship.

On April 16, 2025, the court screened the complaint and found, aside any other claim, that it seemed to state one under the Fair Debt Collection Practices Act. *See* 15 U.S.C. §§ 1692 *et seq*. A month later, NDFCU filed an agreed motion to compel arbitration, noting that Ms. Jackson's dispute concerned two car loans she had with NDFCU and that the loan agreements contained arbitration provisions. The court granted the motion and stayed this action.

On January 26, 2026, the arbitrator issued an opinion and award granting summary disposition to NDFCU on all claims [16-1]. In May 2023, Ms. Jackson, Ronnie Jackson, and Soulful Kitchen's Hope for the Hungry, Corp. obtained a commercial loan from NDFCU for $60,010.00 and executed a loan agreement that required monthly payments and granted NDFCU

a security interest in a 2023 Ford Transit, which NDFCU perfected. The following week, the Jacksons obtained a retail loan agreement from NDFCU for $40,934.26 and executed a secured note that required monthly payments and granted NDFCU a security interest in a 2016 GMC Yukon, which NDFCU perfected.

According to the award, the borrowers failed to make monthly payments under both the loan agreement and secured note. NDFCU mailed final default notices to both to inform them of their breaches of each agreement, and NDFCU issued an order to repossess the vehicles. Ms. Jackson thereafter spoke with an NDFCU representative (Sharon Smith) about the pending repossession of the vehicles, and she told Ms. Jackson that NDFCU would need to receive two payments of $4,700.00 before the credit union would hold any repossession order. The two contemplated that payments would be sent on February 21 and March 21, 2025.

On February 7, 2025, the vehicles were repossessed; on February 18, 2025, the borrowers made a payment of $2,350.00 under the loan agreement and the Jacksons made an equal payment under the secured note; and on February 25, 2025, NDFCU returned the vehicles. Thereafter, and as of September 18, 2025, the borrowers had not made the monthly payment due for each loan, as well as all subsequent monthly payments.

The arbitrator's award recounts that Ms. Jackson filed her demand alleging NDFCU wrongfully repossessed the vehicles, and NDFCU filed with its answer a counterclaim and third-party claims for breach of commercial note and replevin (2023 Transit) against the Jacksons and Soulful Kitchen, and breach of retail loan agreement and replevin (2016 Yukon) against the Jacksons. On November 14, 2025, NDFCU moved for summary disposition, which the arbitrator later granted. The arbitrator found that any agreement between Ms. Jackson and Ms. Smith

needed to have been memorialized in writing to support a valid claim or defense under the Indiana Lender Liability Act or to modify their lending agreements under Indiana's statute of frauds. Because that was not done, NDFCU had not breached any agreement. The arbitrator further found that the borrowers defaulted on the loan agreement and secured note and that NDFCU was entitled to damages and replevin of the vehicles.

The Federal Arbitration Act (FAA), 9 U.S.C. § 1 *et seq.* "embodies a national policy favoring arbitration and placing arbitration agreements on equal footing with all other contracts." *Cont'l Cas. Co. v. Certain Underwriters at Lloyds of London*, 10 F.4th 814, 816 (7th Cir. 2021) (quoting *Hall Street Assocs., LLC v. Mattel, Inc.*, 552 U.S. 576, 581 (2008)) (cleaned up). Under the Act, "[i]f the parties in their agreement have agreed that" a court will enter judgment upon an arbitration award, and a party applies to the specified court within one year of the award for an order to confirm it, "the court must grant such an order unless the award is vacated, modified, or corrected as prescribed [by the Act]." 9 U.S.C. § 9.

An award may be vacated when it was "procured by corruption, fraud or undue means;" the arbitrators were "partial[] or corrupt[];" the arbitrators "refus[ed] to postpone the hearing," "refus[ed] to hear evidence pertinent and material to the controversy," or were guilty of misbehavior that prejudiced the rights of a party; or the arbitrators "exceeded their powers, or so imperfectly executed them that a mutual, final, definite award" was not made. 9 U.S.C. § 10(a). An award may be modified or corrected when there was a "material miscalculation" or "mistake," the arbitrators "awarded upon a matter not submitted to them" that affects the merits, or "the award is imperfect in matter of form not affecting the merits." 9 U.S.C. §§ 11(a)-(c). These provisions "provide exclusive regimes" for review. *Hall Street*, 552 U.S. at 590.

"Judicial review of arbitration awards is tightly limited." *Kinsella v. Baker Hughes Oilfield Operations, LLC*, 66 F.4th 1099, 1103 (7th Cir. 2023) (citation omitted). "Confirmation is usually routine or summary, and a court will set aside an arbitration award only in very unusual circumstances." *Bartlit Beck LLP v. Okada*, 25 F.4th 519, 522 (7th Cir. 2022) (citation omitted). "Arbitrations are creatures of contract, so the arbitrator's power is constrained by the parties' agreement to submit a particular question to arbitration." *Kinsella*, 66 F.4th at 1103 (citations omitted). The court "may not reconsider the merits of an award even when a party argues that the arbitrators made a factual error or even a legal one when interpreting a contract." *Zimmer Biomet Holdings, Inc. v. Insall*, 108 F.4th 512, 515 (7th Cir. 2024). "With few exceptions, as long as the arbitrator does not exceed this delegated authority, her award will be enforced." *Kinsella*, 66 F.4th at 1103 (citation omitted).

The court must first be assured of its jurisdiction—not always an easy question in the world of arbitration. There are two bases for jurisdiction here. In looking to the complaint, the court originally maintained jurisdiction under a federal question, *see* 15 U.S.C. §§ 1692 *et seq.*; *see also* 28 U.S.C. § 1331; *Gunn v. Minton*, 568 U.S. 251, 257 (2013), a necessary underpinning with likely nondiverse parties, *see StarNet Ins. v. Notre Dame Fed. Credit Union*, 2025 U.S. Dist. LEXIS 15370, 4-8 (N.D. Ind. Jan. 24, 2025).[1] Thus having the power to compel arbitration and stay the case—for a federal question complaint filed directly here—the court retains jurisdiction to

---

[1] The FDCPA prohibits use of "false, deceptive, or misleading representation or means in connection with the collection of any debt," bars use of "unfair or unconscionable means to collect or attempt to collect any debt," and provides a civil cause of action against "any debt collector who fails to comply" with the FDCPA. 15 U.S.C. §§ 1692e, 1692f, 1692k. Not knowing the origins of any debt obligation or the role of the credit union or Credit Counseling, and taking all inferences in favor of Ms. Jackson at the time the original complaint was filed, the court could not say at screening that NDFCU was definitely a creditor rather than a debt collector. *See Aubert v. Am. Gen. Fin.*, 137 F.3d 976, 978 (7th Cir. 1998).

confirm or vacate the award. *See Kinsella*, 66 F.4th at 1103 (citing *Badgerow v. Walters*, 596 U.S. 1, 5, 8-11 (2022)); *Davis v. Fenton*, 857 F.3d 961, 962 (7th Cir. 2017); *accord Cortez Byrd Chips v. Bill Harbert Constr. Co.*, 529 U.S. 193, 202 (2000) (venue decision) ("the court with the power to stay the action under § 3 has the further power to confirm any ensuing arbitration award"); *cf. Marine Transit Corp v. Dreyfus*, 284 U.S. 263, 275-276 (1932) (admiralty decision under 9 U.S.C. § 8) ("We do not conceive it to be open to question that, where the court has authority under the statute . . . to make an order for arbitration, the court also has authority to confirm the award or to set it aside for irregularity, fraud, *ultra vires*, or other defect.").

This jurisdiction was not lost merely because the law may later treat the federal claim as without merit, *see Ricketts v. Midwest Nat'l Bank*, 874 F.2d 1177, 1182 (7th Cir. 1989), or because the parties or arbitrator narrowed the scope of claims for decision in arbitration to just state law claims, *see Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002) ("procedural questions which grow out of the dispute and bear on its final disposition are presumptively *not* for the judge, but for an arbitrator, to decide") (quotations omitted); *see also Cont'l Cas. Co.*, 10 F.4th at 819. The parties filed an arbitration demand and counterclaims that set the slate of issues for the arbitrator. No one says the arbitrator failed to decide all claims or that any claims remain for decision. The court doesn't lose jurisdiction merely because the federal claim was conceded or not presented.[2]

In addition, when it comes to motions to confirm or vacate an award under 9 U.S.C. §§ 9-10, the court cannot "look through" the motions to assess jurisdiction based on the underlying

---

[2] The court sees this question as seemingly different than the one before the United States Supreme Court now, *see Jules v. Andre Balazs Props.*, 2025 U.S. App. LEXIS 9888 (2d Cir. Apr. 25, 2025), *cert granted*, 223 L.Ed.2d 270 (U.S. Dec. 5, 2025) (No. 25-83) (argued Mar. 30, 2026), which concerns "[w]hether a federal court that initially exercises jurisdiction and stays a case pending arbitration maintains jurisdiction over a post-arbitration Section 9 or 10 application where jurisdiction would otherwise be lacking," *Petition for Writ of Certiorari* at i, *Jules v. Andre Balazs Props.*, No. 25-83 (U.S. Jul. 22, 2025).

controversy presented in arbitration through Ms. Jackson's new demand or the arbitrator's award. *See Badgerow*, 596 U.S. at 8-11. The court looks instead to the federal complaint. Even so, the court would retain (and choose to retain) supplemental jurisdiction to decide these motions, and choose to retain such jurisdiction for judicial economy and cost-savings to the parties, and because nothing in the court's decision today interferes with state interests. *See Groce v. Eli Lilly & Co.*, 193 F.3d 496, 500 n.6 (7th Cir. 1999) (citing cases).

Under the loan agreement and secured note, the signatories agreed that "[j]udgment upon any award rendered by any arbitrator may be entered in any court having jurisdiction" [18-1, 18-5]. Accordingly, the court must confirm the arbitration award unless it is vacated. Ms. Jackson says the arbitration award must be vacated because the arbitrator resolved the dispute through summary disposition, after refusing to hear material evidence and without conducting an evidentiary hearing. She says this denied her a meaningful opportunity to be heard, and the arbitrator is thus guilty of "misconduct . . . in refusing to hear evidence pertinent and material to the controversy" and of prejudicial misbehavior. *See* 9 U.S.C. § 10(a)(3).

Under § 10(a)(3) of the FAA, "an arbitral award may be vacated where there has been a denial of fundamental fairness." *Bartlit Beck*, 25 F.4th at 523. "A fundamentally fair hearing is one that meets the minimal requirements of fairness—adequate notice, a hearing on the evidence, and an impartial decision by the arbitrator." *Slaney v. The Int'l Amateur Athletic Fed'n*, 244 F.3d 580, 592 (7th Cir. 2001) (quotations and citation omitted). "On procedural and evidentiary matters, federal courts defer to an arbitrator's decisions so long as those decisions are reasonable." *Bartlit Beck*, 25 F.4th at 522 (cleaned up). "Although they are entitled to fair proceedings, parties that

have chosen to remedy their disputes through arbitration rather than litigation should not expect the same procedures they would find in the judicial arena." *Id.* (quotations and citation omitted).

An arbitrator "is not bound to hear all of the evidence tendered by the parties." *Slaney*, 244 F.3d at 592 (citation omitted). Rather, she "must merely give each of the parties to the dispute an adequate opportunity to present its evidence and arguments." *Id.* (citation omitted) (cleaned up). "It is when the exclusion of relevant evidence actually deprived a party of a fair hearing that it is appropriate to vacate an arbitral award." *Id.*; *see also Mical v. Glick*, 581 F. Appx. 568, 570 (7th Cir. 2014) ("An arbitrator's refusal to receive relevant evidence, standing alone, does not warrant vacating an arbitration award"). "This standard typically is met only when an arbitrator wrongly excludes the sole evidence on a pivotal issue." *Mical*, 581 F. Appx. at 570 (citing cases).

Ms. Jackson says she submitted "sworn statements, payment confirmations, and contemporaneous communications establishing disputed facts concerning payment deadlines, verbal agreements, and ongoing negotiations to prevent repossession." She also says the "arbitration record reflects genuine disputes of material fact" that "required credibility determinations and factual findings that could not properly be resolved on written submissions alone."[3] She doesn't indicate what testimony the arbitrator refused to hear or explain why this refusal to consider it left the arbitrator without the only evidence on a key issue. Nor does she dispute NDFCU's assertion that it included a recording of her phone call with Ms. Smith in the exhibits attached to its motion for summary disposition [18 ¶ 21].

---

[3] Ms. Jackson says these disputes of material fact included "conflicting payment deadlines communicated by NDFCU representatives; plaintiff's reliance on verbal agreements acknowledged by NDFCU; ongoing negotiations at the time repossession occurred; and damages resulting from the loss of vehicles used for business purposes."

In truth, Ms. Jackson wishes the court to relitigate the summary disposition. That isn't proper. And testimony was unnecessary for the arbitrator to reach her decision. She noted that Indiana law required any agreement or loan modification between NDFCU and Ms. Jackson (or other borrowers for that matter) to be put in writing and no such written modification existed [16-1]. She also found the record indisputably showed the borrowers breached the loan agreement and secured note by failing to make timely payments, and the agreements entitled NDFCU to the vehicles because they were in default. Ms. Jackson presents no evidence that the arbitrator wrongly excluded "the sole evidence on a pivotal issue," *Mical*, 581 F. Appx. at 570, or that the arbitrator conducted an unfair process of presentation and decisionmaking.

As there is no evidence that the arbitrator is guilty of "refusing to hear evidence pertinent and material to the controversy" or of any other prejudicial misbehavior, 9 U.S.C. § 10(a)(3), there is no basis to vacate the arbitration award. Accordingly, the court "must grant" NDFCU's application to confirm the award. 9 U.S.C. § 9.

## CONCLUSION

For these reasons, the court GRANTS the motion to confirm [18], DENIES AS MOOT the duplicative motion to confirm [17], DENIES the motion to vacate [15], CONFIRMS the arbitration award [18-7], and DIRECTS the clerk to enter judgment accordingly as follows:

A. Judgment is entered in favor of NDFCU as to the Complaint and Arbitration Demand;

B. NCFCU is hereby awarded judgment as to the Loan Agreement against LaQuisha and Ronnie Jackson and Soulful Kitchen, as of January 23, 2026, as follows: $56,854.73 of principal, interest of $4,714.68 as of September 18, 2025 and additional interest from September 19, 2025 to January 23, 2026, in the amount of $2,519.68 (127 x daily interest

rate of $19.84) and interest will continue to accrue at a rate of $19.84 per day until this judgment is paid, delinquent fees of $171.00, and attorney's fees in the amount of $2,619.00. Thus, the total award of damages on the Loan Agreement in favor of NDFCU and against the Jacksons and Soulful Kitchen is $66,879.09 plus interest from January 24, 2026, until this judgment is paid;

C. NCFCU is hereby awarded judgment as to the Secured Note against LaQuisha and Ronnie Jackson as of January 23, 2026, as follows: $35,951.85 of outstanding principal, interest of $2,817.48 as of September 18, 2025 and additional interest from September 19, 2025 to January 23, 2026, in the amount of $1,687.83 (127 x daily interest rate of $13.29) and interest will continue to accrue at a rate of $13.29 per day until this judgment is paid, delinquent fees of $171.00, and attorney's fees in the amount of $2,619.00. Thus, the total award on the Secured Note in favor of NDFCU and against LaQuisha and Ronnie Jackson is $43,247.16 plus interest from January 24, 2026, until this judgment is paid;

D. NDFCU is awarded immediate possession of the 2023 Ford Transit T-350, VIN: 1FTBF7C85PKA00009 ("2023 Transit") and the 2016 GMC Yukon Denali, VIN: 1GKS2CKJ2GR138529 ("2016 Yukon");

E. NDFCU is also entitled to a subsequent judgment in its favor and against LaQuisha and Ronnie Jackson and Soulful Kitchen upon application to the Court as to any fees incurred to repossessing and selling the 2023 Transit and the 2016 Yukon, respectively;

F. NDFCU is authorized to sell the 2023 Transit at either a public auction or private sale and to apply the net proceeds from such sale to the adjudicated amount of Borrowers' indebtedness under the Loan Agreement; and

G. NDFCU is authorized to sell the 2016 Yukon at either a public auction or private sale and to apply the net proceeds from such sale to the adjudicated amount of the Jacksons' indebtedness under the Secured Note.

This order terminates the case.

SO ORDERED.

May 13, 2026                                  s/ Damon R. Leichty
                                              Judge, United States District Court